1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| W.V., a minor, by his mother, N.V., as his next friend,<br><br>Plaintiff,<br><br>vs.<br><br><br>ENCINITAS UNION SCHOOL DISTRICT,<br><br>Defendant. | CASE NO. 11cv232-LAB (JMA)<br><br>**ORDER IMPOSING SANCTIONS UNDER FED. R. CIV. P. 11; AND**<br><br>**ORDER DISMISSING COUNTERCLAIM** |

**Procedural History**

Nidia Vargas, through counsel, filed the complaint initiating this action on February 3, 2011. Citing the Individuals with Disabilities Act, she appealed an administrative decision regarding the education afforded her minor son N.V. by Defendant Encinitas Union School District. Along with the complaint, Ms. Vargas filed a motion for appointment as *guardian ad litem*, which was granted. On June 21, 2011, she filed her amended complaint. Then on July 1, her attorneys Robin Champlin and Brian Sciacca moved to withdraw, a motion she filed written opposition to. The motion to withdraw was short on detail, so the Court directed Ms.

/ / /

/ / /

/ / /

- 1 -

11cv232

1   Vargas and her counsel to appear at a hearing on September 12, 2011. The District was not

2   required to appear at that hearing, and did not do so.[1]

3        At that hearing, it became clear the motion was pleaded without much specificity

4   because a good deal of the information was privileged and confidential, and counsel were

5   understandably sensitive to this. But by opposing the motion to withdraw, by supporting that

6   opposition with summaries of attorney-client communications, and by freely discussing these

7   matters in open court, Ms. Vargas has waived any privilege or claim to confidentiality. *See*

8   *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001) (noting that a client may waive

9   attorney-client privilege by placing privileged matters in controversy or by disclosing

10  privileged communications).

11       Ms. Vargas' counsel had represented her at the administrative level, where they

12  obtained good results, but argued they could not in good faith continue to represent her at

13  the district court level.[2] The reason, they said, was that she had (without their involvement)

14  entered into a settlement agreement with the District regarding N.V.'s education, and she

15  could not in good faith maintain this appeal. Ms. Vargas' position was that they were

16  contractually obligated to continue to represent her and to litigate this action to finality

17  regardless of any settlement she might have entered into.  Ms. Vargas presented the

18  settlement agreement, and the Court noted that in it she had promised not to file a request

19  for a due process hearing until the end of 2011, and that by filing the complaint and

20  maintaining her claims, it appeared she was not litigating in good faith. (Tr. (Docket no. 26-7)

21  at 8:20–10:2.) Ms. Vargas then explained that she thought the District had failed to comply

22  / / /

23  _____

24  [1] A certified copy of the full transcript of that hearing is attached as Exhibit 1 to the District's motion for sanctions, along with a request for judicial notice of the transcript. (Docket no. 26-6.) Under Fed. R. Evid. 201(c)(2), at a party's request the Court must—if

25  provided with the necessary information—take judicial notice. The Court's own records, and facts contained in those records, are the type of facts covered by this rule. *United States v.*

26  *Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). The request for judicial notice is therefore **GRANTED**. The summary of what occurred at that hearing is drawn from that transcript.

27

28  [2] At the hearing, Ms. Vargas' attorneys made clear she didn't initially tell them she had settled or provide them with the terms of the settlement agreement. The issue of when she did tell them never arose.

1  with the terms of the settlement agreement, and that this relieved her of honoring her

2  promise to the District not to file an appeal in federal court.

3         Ms. Vargas' counsel responded that she had never told them anything about the

4  District failing to comply with the settlement agreement; that they had no knowledge of

5  whether her characterization was correct; and that she had separately agreed to an IEP

6  (individualized education program) for her son, but because she had never shown it to them

7  they could not verify what it required. (Tr. at 14:11–19.) But they did point out that procedures

8  were in place for enforcing the settlement agreement. These included proceeding through

9  the California Department of Education, or filing an action in state court to enforce the

10  settlement agreement—but not filing an appeal in federal court. (*Id.* at 14:21–15:1.)

11         After considering the settlement agreement Ms. Vargas signed, and hearing her

12  arguments, the Court noted that Ms. Vargas had apparently waived appeal, and that her

13  attorneys were reasonably trying to comply with their professional and ethical obligations by

14  not advancing frivolous litigation. (Tr. at 23:19–24:7; 25:16–26:8.) The Court noted that the

15  question of dismissal was not before it at the time, but noted that the District would probably

16  move to dismiss based on the settlement agreement. (*Id.* at 25:16–23, 26:6–7.) The Court

17  therefore permitted Ms. Vargas' counsel to withdraw, and Ms. Vargas proceeded *pro se* from

18  that point on.

19         Defendant has pointed out that three times before this hearing, it had requested that

20  Ms. Vargas withdraw her complaint and that, because she continued refusing, her counsel

21  took the unusual step of withdrawing. (Mot. at 10:23–11:5.) It points out that it asked her a

22  fourth time after the hearing, and intended to ask her again at a scheduled Early Neutral

23  Evaluation (ENE) conference (at which she did not appear). (*Id.* at 11:19–25).  Defendant

24  also points to misrepresentations Ms. Vargas made at the hearing, about the settlement

25  agreement not being final and being subject to continuing negotiations, (Tr. at 11:1–2), a

26  statement the Court later, after reading the agreement, made clear was wrong. (Tr. at

27  25:2–19.)

28

On November 14, 2011, the parties were to appear for an ENE conference before Magistrate Judge Jan Adler. (*See* Docket no. 18 (order scheduling ENE conference).) Ms. Vargas did not appear for that conference and could not be reached by phone. (*See* Docket no. 19.) On November 22, the District moved to dismiss. On December 13, 2011, the District moved for sanctions, both for Ms. Vargas' failure to appear at the ENE conference, and for litigating in bad faith.[3]  The portion of the sanctions motion pertaining to the ENE was referred to Judge Adler, and the Court set the other issues in the motion for sanctions, as well as the motion to dismiss, for hearing on January 30, 2012.

Ms. Vargas sought an extension of time to respond to the motion to dismiss and the motion for sanctions, which the Court granted, ordering her to file her opposition no later than February 1. The parties then jointly moved to extend the hearing date and briefing dates a second time, and the hearing was rescheduled for March 26. Ms. Vargas filed an opposition to the motion for sanctions, but didn't file any opposition to the motion to dismiss. The Court therefore took the motions under submission on the papers and took the hearing off calendar.

Even though the hearing had been taken off calendar and notice mailed to Ms. Vargas, she nevertheless appeared on March 26 for the hearing. Although told that the hearing was off calendar, she began asking the Court questions about whether her opposition had been filed. That question, and its answer, are summarized in the Court's order

---

[3] Under Fed. R. Civ. P. 11(c)(2), a motion for sanctions must be made separately from any other motion and must describe the offending conduct. The rule does not limit a sanctions motion to a request for sanctions under Rule 11 only, although the motion must describe the conduct that violates Rule 11(b). Motions for sanctions under several different provisions of law are routinely filed and frequently granted, and the grants frequently affirmed. *See, e.g., De Dios v. Int'l Realty & Investments*, 641 F.3d 1071, 1076 ("[T]he district court had ample grounds on this record to impose the sanctions under Rule 11 and its inherent authority to curb abusive litigation practices.") Here, Defendant moved for sanctions based on conduct in the same matter (litigating after settling and promising not to sue, and failing to appear for a scheduled Early Neutral Evaluation conference), but before two different judges. Because the conduct was potentially related and the different incidents thus relevant to Ms. Vargas' state of mind and culpability, it was appropriate to seek sanctions on all grounds in one motion. Nevertheless, in the interests of proper and efficient adjudication of the claims, the Court referred the portion that occurred before Judge Adler (failure to appear for the ENE) to him for adjudication, and ordered Plaintiff to file her opposition to the sanctions motion and show cause why she should not be sanctioned for pursuing this action in bad faith.

of March 27 (Docket no. 42.) That order explained that although Ms. Vargas' opposition to the motion for sanctions had been received and filed, she had never filed any opposition to the motion to dismiss. The order directed her to file supplemental briefing by April 23, explaining why the motion to dismiss should not be granted. The order made clear that if no supplemental briefing was filed opposing the motion to dismiss, the Court would assume she conceded that point. (*Id.* at 2:3–9, 2:16–19.) The order set a hearing on May 19, and specified that if Ms. Vargas didn't file an opposition to the motion to dismiss within the time permitted, the dismissal issue would be considered submitted on the papers and the only issue at the hearing would be sanctions. (*Id.* at 2:15–19.) The order also pointed out that Ms. Vargas could check the docket herself to determine the status of a hearing or the case, and told her how to do so. (*Id.* at 2:20–22 and n.1.)

The parties then jointly moved to continue the sanctions hearing, and the deadline by which Ms. Vargas was to file her opposition. The Court granted this motion, and required Ms. Vargas to file her opposition no later than May 29, 2012. (Docket no. 44.) Ms. Vargas never filed any opposition, and on June 19, the Court granted Defendant's unopposed motion to dismiss, took the sanctions motion under submission, and vacated the hearing. Judgment was entered on the complaint on June 19.

**Motion for Sanctions**

The District has moved for sanctions under Fed. R. Civ. P. 11 and under the Court's own inherent power. Defendant has provided evidence it complied with Rule 11(c)(2)'s safe harbor provision, and that Ms. Vargas did not withdraw her complaint or cease litigating after that time. The Court is aware that it may consider sanctions on the basis of its own inherent authority without resorting to Rule 11, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991), but the standard for imposing sanctions under Rule 11 is lower in most respects.[4]

---

[4] Rule 11 requires compliance with certain formal requirements before sanctions can be imposed, while the imposition of sanctions under a court's own inherent authority need only comport with due process. At the same time, the degree of culpability required for imposition of sanctions under rule 11 is lower, requiring only a finding of objectively unreasonable conduct, rather than bad faith. *In re DeVille*, 361 F.3d 539, 548 (9th Cir. 2004) (citing *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990)).

Because Rule 11 provides an adequate basis for dealing with the alleged misconduct, the Court will analyze and discuss only Rule 11.

**Legal Standards**

Rule 11 sanctions decisions must comport with due process. *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1027 (9th Cir. 1994). This requires notice and an opportunity to be heard, but not necessarily a hearing; the chance to respond through submission of a brief is usually all that is required. *Id.*

Pro se litigants such as Ms. Vargas are subject to sanctions. *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1177 (9th Cir. 1996) (vacating district court's order declining to impose sanctions on pro se litigant and remanding for a determination of whether a Rule 11 violation had taken place and, if so, what sanctions should be imposed); *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) (Rule 11 applies to unrepresented parties, and district courts are not at liberty to automatically exempt them from sanctions). The Court must, however, take a party's pro se status into account when determining whether the party's actions were reasonable. *Id.* Under Rule 11(c)(2), the Court may not impose monetary sanctions on a pro se litigant for a violation of Rule 11(b)(2), but a pro se litigant can be sanctioned under other provisions of Rule 11. The Court "can properly consider [a party's] ability to pay monetary sanctions as one factor in assessing sanctions." *Warren*, 29 F.3d at 1390.

The fact that a party is a plaintiff pursuing civil rights remedies does not argue against sanctions. In *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 762 (1980), the Supreme Court, considering the appropriateness of sanctions under citing 28 U.S.C. § 1927, held:

> The statute is indifferent to the equities of a dispute and to the values advanced by the substantive law. It is concerned only with limiting the abuse of court processes. Dilatory practices of civil rights plaintiffs are as objectionable as those of defendants.

The Court went on to point out that a number of other provisions of federal law provided for sanctions, and noted the need for uniformity despite the type of case or the provision invoked. *See id.* at 762 ("A court's processes may be as abused in a commercial case as in

1  a civil rights action."), 763 (discussing sanctions under Fed. R. Civ. P. 37, and noting district

2  courts' obligation to be diligent in sanctioning offending parties).

3      Here, Defendant chiefly argues Ms. Vargas presented pleadings for improper

4  purposes, *i.e.*, to harass, cause unnecessary delay, or needlessly increase the cost of this

5  litigation. (Mot., 7:15–16.) It bears emphasis that a party who has (or claims to have) a noble

6  or worthy motive does not always have a proper purpose. *See Lockary v. Kayfetz*, 974 F.2d

7  1166, 1172 (9th Cir. 1992) (superseded by statute on other grounds as stated in *Margolis v.*

8  *Ryan*, 140 F.3d 850, 854–55 (9th Cir. 1998)) (party claiming to have noble motives was still

9  subject to sanctions). *See also Roadway Exp.*, 447 U.S. at 762 ("Dilatory practices of civil

10  rights plaintiffs are as objectionable as those of defendants."); *Oliveri v. Thompson*, 803 F.2d

11  1265, 1280–81 ("[The attorney] argues . . . that special treatment of sanctions should be

12  given to attorneys who handle unpopular civil rights claims, particularly those representing

13  indigents and minority clients. We reject this claim out of hand.")

14      **Discussion**

15      Rule 11(b) provides that, by presenting to the Court a pleading or other paper, an

16  unrepresented party is making four particular certifications. "Presenting" includes signing,

17  filing, submitting, or later advocating that pleading or paper. The pertinent certification here

18  is set forth in Rule 11(b)(1), namely, "it is not being presented for any improper purpose, such

19  as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Here,

20  Defendant has argued that, by continuing to press her complaint, in spite of repeated

21  requests to withdraw it, Ms. Vargas was acting with improper purposes. They argue that

22  because she settled her claims already, and agreed not to sue, she knew she should not

23  have filed this action. Furthermore, as the Court admonished her at the attorney withdrawal

24  hearing, Ms. Vargas had given her word not to sue, and had gained concessions by doing

25  that. In addition to having an ethical obligation not to pursue this case, her retained counsel

26  were honor-bound to abide by her promises. (*See* Tr. at 4:14–5:2, 9:7–10:2 (Court's

27  discussion of obligations to keep one's word);*see also id.* at 25:16–22 (Court's determination

28  / / /

1    that Plaintiff gave up right to sue in exchange for concessions, and that if school district

2    reneged on its agreement, her recourse did not include suing in federal court).)

3        The record shows that, although Ms. Vargas was told by the Court and her own

4    retained counsel that she had waived the right to bring this action, she continued to pursue

5    it. Although she did not sign or file the complaint herself, she forbade her counsel to withdraw

6    it, left it pending in spite of Defendant's repeated requests that she withdraw it, and later

7    advocated it while proceeding pro se.  She advocated her claims in her opposition to her

8    attorneys' motion to withdraw (Docket no. 10) and later at the hearing on September 12,

9    2011, arguing vehemently that they were meritorious and that her counsel should be required

10   to help her litigate them. The meritoriousness of her claims was one of the main reasons she

11   gave why her counsel should not be allowed to withdraw. By leaving her complaint pending

12   after this point, she forced Defendant to file a motion to dismiss. (*See* Mot., 11:27–12:2

13   (explaining that Defendant was forced to file motion to dismiss because Plaintiff wouldn't

14   withdraw it).)

15       Ms. Vargas also continued to advocate her claims after the motion for sanctions was

16   filed. She sought multiple extensions of time (some *ex parte*, some by joint motion)[5] and

17   additional opportunities to oppose the motion to dismiss. The delay occasioned by these

18   extensions did not prejudice Defendant, but it did have the effect of keeping her claim alive

19   and pending for many additional months. She also advocated her claims in her opposition

20   to the sanctions motion.

21   / / /

22

23   _____

         [5] Under Civil Local Rule 7.2(b), stipulations for which court approval is required must
24   be filed as joint motions. Ms. Vargas was not responsible for all of the extensions; some of
     them were at Defendant's request, to clear up a conflict created when the Court granted Ms.
     Vargas' two *ex parte* requests for more time. (*See* Docket no. 35 at 2:12–21, Docket no. 43
25   at 2:19–3:9.)  The record shows that Defendant was seeking to move hearings, which Ms.
     Vargas agreed to on condition that the briefing schedule also be extended. Defendant
26   acceded to Ms. Vargas' requests. This shows Defendant was attempting to resolve
     scheduling conflicts created by factors beyond its control, and was acceding to Ms. Vargas'
27   requests for more briefing time. Acceding to an opponent's request for an extension of time
     is consistent with attorneys' professional obligations of civility, and does not imply Defendant
28   agreed with Ms. Vargas' underlying position, approved of her bringing this action, or thought
     the action should remain pending for as long as it did.

11cv232

Having settled her claims and, in exchange for Defendant's concessions, agreed not to sue, Ms. Vargas should not have brought this lawsuit at all. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 311 (2002) (noting that if plaintiff settles claims with a defendant, the plaintiff "obviously cannot continue to pursue those same claims in court"); *Outlaw v. United States*, 104 Fed. Cl. 226, 228–29 (Fed. Cl. 2012) (where plaintiff agreed as a condition of settlement to withdraw his complaint with prejudice, he could not continue pursuing claims); *Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 848 (9th Cir. 2004) (affirming district court's dismissal of claims that plaintiff had already settled).

Ms. Vargas' attorneys filed the complaint for her and at her request, not knowing she had settled, or at least not knowing the details of her settlement agreement. At that point Ms. Vargas may have erroneously but reasonably believed she was righteous in suing. But when her own retained counsel found out she had settled and told her she could not sue, and then sought to withdraw rather than take what they told her were unethical and in violation of her agreement, she was on notice that the settlement agreement prevented her from continuing to maintain her claims. And when the Court examined the settlement agreement and told her the same thing, she had confirmation of what her own counsel had told her. From then on, she took no steps to withdraw her complaint or even to investigate further whether she should. Instead, she repeatedly said she needed more time to file her opposition and sought, and was granted, multiple extensions of the briefing schedule. In the end, she never filed any opposition.

To be clear, the issue is not whether Ms. Vargas filed or maintained legally frivolous claims. As an unrepresented party, she cannot be sanctioned for that under Rule 11. Rather, the issue is whether, when she advocated pleadings that had been filed earlier, she did so with an improper purpose. Unrepresented parties can be sanctioned under Rule 11 for that behavior.

Defendant's motion shows that Plaintiff used the pendency of her complaint as a bargaining chip, to obtain additional concessions from Defendant. (Decl. of Jonathan Read, in Supp. of Mot. for Sanctions, ¶ 6 and Ex. A (documenting Ms. Vargas' refusal to allow her

attorneys to withdraw complaint unless six additional terms were added to the settlement agreement).)  The fact that she wanted to obtain an education for her son, while a laudable goal, does not excuse improper litigation tactics. Here, the motion and the exhibits show that Ms. Vargas was intentionally drawing out the litigation by refusing to withdraw the complaint, and by later advocating it, in order to obtain additional concessions from Defendant that she was not entitled to under the binding settlement agreement. She knew the settlement agreement was final and that she had agreed not to bring this action because her own attorneys, who had represented her and obtained good results for her at the administrative level, told her so and ultimately took the step of refusing to represent her any more. The Court later confirmed what her attorneys had told her, that in her settlement agreement she agreed not to sue, and that she was bound by that. The Court also reminded her of her and her counsel's obligation to keep their word.

Although it was not part of the behavior identified in the sanctions motion, the Court also notes that Ms. Vargas repeatedly requested more time to file an opposition to the motion to dismiss, but ultimately filed none. This too bespeaks a motive to cause vexatious delay.

Ms. Vargas' opposition to the sanctions motion argues that she should not be sanctioned because her complaint has merit, because the Court has never told her that her complaint has no merit, that she has no pattern of filing frivolous actions in court, that she is proceeding pro se and doesn't know the law, and that she is entitled to leeway because she is a single parent who is merely trying to obtain an education for her disabled son. All of these have been addressed above. The contention that the Court never said her complaint lacked merit is at best wishful thinking; the Court did tell her this at the hearing on her counsel's motion to withdraw. That she chose to ignore it or interpret it as being favorable to her in some way does not change what was said.  Whether she has a pattern of filing frivolous lawsuits is not a defense; litigants are required to follow the rules even the first time they sue. Rule 11 governs all attorneys and parties, not just those who have a history of misconduct.

Ms. Vargas also cites *Price v. Hawaii*, 789 F. Supp. 330, 335–36 (D.Haw. 1992) for

1   the principle that Defendant "has failed to act promptly in filing this motion." (Opp'n, 3:20–23.)

2   She points out she filed the complaint in February, 2011 and Defendant didn't move for

3   sanctions until December, 2011. (*Id.*) What Ms. Vargas terms "delay," however, is patience

4   and an appropriate desire to work things out. As mentioned above, Defendant repeatedly

5   attempted to negotiate with Plaintiff while she refused to withdraw the complaint.

6   Furthermore, Defendant didn't move for sanctions merely for filing the complaint, but for

7   advocating it in bad faith. She was doing that at least as late as September 12, 2011 at the

8   hearing. Defendant also reasonably believed she would show up at the ENE scheduled for

9   November 14, possibly giving them another opportunity to persuade her to withdraw it.

10   Furthermore, Rule 11(c)(2) requires that the sanctions motion first be served on the

11   party to be sanctioned, and only if the offending pleading is not withdrawn may the motion

12   be filed. Defendant did this, first serving Plaintiff on November 22, 2011 (*see* Docket no. 26-9

13   (proof of service)), and then filing the motion 21 days later. This evidence shows Defendant

14   waited until about a week after Ms. Vargas failed to show up for the ENE, before serving the

15   motion. Ms. Vargas' argument also omits to mention being served with the motion in

16   November.

17   Here, Ms. Vargas' repeated refusals to withdraw her complaint, her continued bad

18   faith advocacy of her claims, and her misrepresentations to the Court about the non-final

19   nature of the settlement agreement are all sanctionable. Defendant has mentioned the total

20   amount of attorney's fees and costs it incurred since the complaint was filed. But the Court

21   is not inclined to award actual fees, for two reasons. First, Defendant has not documented

22   the fees and costs, and the Court therefore cannot determine whether they are reasonable.

23   Second, the Court is only willing to sanction Plaintiff for actions she took after clear

24   confirmation that she should not have brought this lawsuit and should not continue to

25   prosecute it. That occurred when her own counsel, whom she had every reason to trust,

26   learned that she had entered into a settlement agreement behind their backs, found out the

27   contents of that agreement, and told her they could not ethically continue to represent her

28   because she had settled her claims. From that point on, no one ever gave her any reason

1  to continue to pursue her claims in this Court or suggested that she could legitimately do

2  anything other than withdraw her complaint.

3      Under Rule 11(c)(1), the Court may impose an "appropriate" sanction. Under 11(c)(4),

4  the sanction "must be limited to what suffices to deter repetition of the conduct or comparable

5  conduct by others similarly situated." This can, if warranted, mean an award of reasonable

6  attorney's fees or other costs, both for the sanctionable behavior and for the motion.  But

7  here, the Court is not convinced an award of attorney's fees is necessary for effective

8  deterrence. Rather, the Court believes the sum of $2500 will reasonably compensate

9  Defendant for having to prepare and file the motion to dismiss, and for other unnecessary

10  trouble Ms. Vargas' violation of Rule 11 put it through, and that such a sum is no greater than

11  what suffices to deter such conduct by Ms. Vargas and other similarly situated people.

12      The Court's assessment of this amount is based on its review of the record and the

13  pleadings, Ms. Vargas' own representations to the Court, and the Court's own face-to-face

14  interactions with Ms. Vargas.  On the occasions when she appeared before the Court, the

15  Court had the opportunity to observe her demeanor and to assess the degree to which she

16  understood what was being said to her, the degree to which she agreed or disagreed, her

17  level of determination, her willingness to be reasonable and comply with requirements, and

18  the like.

19      The Court is aware that sanctioning a single mother who brought suit in order to obtain

20  an education for her disabled son may seem harsh and anomalous. The Court understands

21  Ms. Vargas' goals and her desire to do the best she can for her son. It is very appropriate

22  and laudable that she should want to see her son receive the best possible education.  And

23  the Court has borne these facts in mind when adjudicating this motion.  But at the same time,

24  she is not entitled to pursue these worthy goals by illegitimate means. In this case, that

25  meant imposing needless costs and burdens on Defendant in an effort to pry

26  / / /

27  additional concessions from it even after it had settled the matter with her. This was an

28  unacceptable and impermissible purpose, whatever her long-term goal or motivation was.

1    Furthermore, Ms. Vargas' actions cost society something. Defendant is a public school
2    district, and as such it is publicly funded. Causing it to incur needless costs imposes burdens
3    on the District and those who depend on it, as well as on society more generally.  Forcing
4    a public school district to spend its money pointlessly on legal services is unfair and unjust,
5    and ought to be discouraged.

6    **Counterclaim**

7    As part of its defense, Defendant filed a counterclaim along with its answer, apparently
8    as a precaution in case the Court decided the settlement agreement was not binding or
9    decided to adjudicate Ms. Vargas' claims for some other reason. Defendant never took any
10   steps to prosecute its counterclaim, which remains technically pending, although in effect it
11   has been abandoned. It can therefore be dismissed under Fed. R. Civ. P. 41(b).

12   **Conclusion and Order**

13   For these reasons, the motion for sanctions under Rule 11 for continuing to advocate
14   and prosecute  Plaintiff's claims for improper purposes is **GRANTED**. The Court is not
15   sanctioning Ms. Vargas for failing to appear for the ENE; Judge Adler has already ruled on
16   that and denied sanctions.  The Court believes this sanction suffices, and therefore declines
17   to sanction Ms. Vargas under its own inherent authority, although it would have done so if
18   Rule 11 sanctions had been inappropriate or unavailable.

19   Within 30 calendar days from the date this order is issued, Nidia Vargas is **ORDERED**
20   to make payment of $2500.00 to Defendant, by sending or delivering it to Defendant's
21   counsel. She should contact Defendant's counsel to make arrangements for payment.

22   The counterclaim is **DISMISSED WITHOUT PREJUDICE**, and the Clerk is directed
23   to enter judgment on it.

24   / / /

25   / / /

26   / / /

27   With this ruling, all issues in this case have been adjudicated. The Clerk is therefore
28   directed to close the docket and not to accept further filings, except for notices of appeal or

1    a motion pursuant to Fed. R. Civ. P. 59 or 60.

2

3          **IT IS SO ORDERED**.

4    DATED: _____9/24/2012_____

5                                               _Larry A. Burns_

6                                               **HONORABLE LARRY ALAN BURNS**
     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28